[No. D048830. Fourth Dist., Div. One. Dec. 20, 2007.]

SCHUTTE & KOERTING, INC., et al., Plaintiffs and Appellants, v. REGIONAL WATER QUALITY CONTROL BOARD, SAN DIEGO REGION, Defendant and Respondent.

## COUNSEL

Wactor & Wick, William D. Wick and Anna L. Nguyen for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Mary E. Hackenbracht, Assistant Attorney General, Carol A. Squire and David H. Robinson, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**NARES, Acting P. J.**—Respondent California Regional Water Quality Control Board (the Regional Board or Board) oversees the investigation and cleanup by appellants Schutte & Koerting, Inc. (hereafter sometimes referred to as S&K), and Ametek, Inc. (Ametek) (together, appellants), of a large toxic groundwater plume of metal cleaning solvents and other industrial wastes that leaked into the ground at an aerospace manufacturing facility that appellants once owned and operated. In July 2003 the Regional Board issued an investigative order (the HHRA order) under Water Code[1] section 13267, requiring appellants to conduct a human health risk assessment (hereafter sometimes referred to as HHRA) at the aerospace site to determine whether chlorinated solvent vapors from the toxic plume were migrating into the buildings at the site and exposing the employees there to an unacceptable risk to their health due to the inhalation of any such vapors. Without obtaining a hearing before the Regional Board, appellants unsuccessfully challenged the HHRA order by submitting two petitions for review to the State Water Resources Control Board (the State Board), and then petitioned the superior court under Code of Civil Procedure section 1094.5 for a writ of administrative mandamus ordering the Regional Board to set aside the HHRA order or, alternatively, compelling the Regional Board to hold a hearing on the issues raised in the writ petition. The court denied the writ petition and entered judgment in favor of the Regional Board, finding there was no evidence to show that appellants had requested a hearing before the Regional Board, and appellants had failed to identify and present to the court any issues within the court's jurisdiction under Code of Civil Procedure section 1094.5.

Appellants contend the judgment must be reversed because (1) the Water Code expressly authorizes judicial review of "any" Regional Board order, and does not require a hearing before or after the Regional Board issues an order; and (2) the court's judgment that appellants have a right to independent judicial review of the HHRA order only if the Regional Board held a hearing is wrong as a matter of law because it deprives them of their statutory right to de novo judicial review and their constitutional right to due process.

We conclude the court committed reversible error by denying appellants' petition for writ of administrative mandamus on the ground that the Regional Board did not hold an administrative hearing relating to the challenged HHRA order. Accordingly, we reverse the judgment and remand the matter for an adjudication on the merits.

---

[1] All further statutory references are to the Water Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

An aerospace and electronics manufacturing company that is not a party to this appeal operated its business in the late 1940's at 790 Greenfield Drive (hereafter referred to as the site or facility) in El Cajon, California. The manufacturing process generated wastewater and other wastes, including metal cleaning solvents (containing chlorinated chemicals such as trichloroethane, tetrachloroethane, trichloroethylene (TCE)), heavy metal waste, paint products, various acids, epoxies, caustic soda, chemical-milling rinse water, and storm water. TCE is a "Group 2A Probable Human Carcinogen." The company installed a sump to hold the wastewater and waste. The sump was designed to receive up to 7,000 gallons of waste per month. Waste that was discharged to the sump leached into the soil and groundwater in concentrations that exceeded water quality objectives, resulting in conditions of pollution and contamination.

The contaminated groundwater from the facility migrated off the property in a plume that is flowing from southeast to northwest at an estimated rate of 110 to 200 feet per year. The facility is located in the El Cajon Hydrologic Subarea and is hydraulically connected to the San Diego River Hydrologic Subarea, which is about 2.5 miles from the facility and is currently used as a municipal drinking water supply by various water districts and the City of San Diego.

Ametek purchased the aerospace business in 1968 and continued to operate the business at the site. Ametek ceased operating the sump in 1983 and began discharging the wastewater through the sewer system under a permit. Eventually, it found other methods for processing the wastewater. In 1988 Ametek removed the holding sump, dug out some of the contaminated soil around the sump, and disposed of both offsite under agency oversight. Late that year, Ketema, Inc. (Ketema),[3] S&K's predecessor in interest, acquired the business and site from Ametek, and began site assessment and groundwater investigation.

Ketema installed 14 groundwater monitoring wells that showed very high concentrations of chlorinated solvents in the groundwater beneath and immediately northwest of the site. Other than the initial 1988 excavation that removed the sump and 190 cubic yards of soil, Ametek and Ketema

---

[2] Appellants' cursory and superficial three-page presentation of the following factual and procedural background of this complicated matter is incomplete and inadequate. The portion of the factual background pertaining to the history of the ownership and operation of the aerospace facility in question is largely undisputed and is drawn from the HHRA order and appellants' pleadings.

[3] Ketema is Ametek spelled backwards.

conducted no active cleanup or abatement at the site and did not attempt to remediate the offsite plume of contaminated groundwater. Two HHRA's were performed offsite on adjacent property under the auspices of the California Department of Toxic Substances Control (DTSC).

In 1998 Ketema sold the site to Senior Flexonics, Inc. (Senior Flexonics), and Ketema changed its name to Schutte & Koerting, Inc. Ketema and Ametek stipulated that they would remain responsible for any necessary investigation and abatement of the plume and released Senior Flexonics from liability for cleanup and abatement involving the wastes discharged at the site before Senior Flexonics acquired it.

Also in 1998, the Regional Board issued cleanup and abatement order No. 98-11 (the 1998 CAO), which required Ametek and Ketema to complete investigation of numerous issues at the site and directed them to remove the chlorinated solvents from the groundwater beneath the site. The Regional Board eventually withdrew the 1998 CAO after S&K and Ametek objected to the order and filed a lawsuit, and the parties mediated their dispute.

A. *Mediation and the 2002 Cleanup and Abatement Order*

In September 2002, following mediation in late July 2002 that did not result in a written settlement agreement, the Regional Board issued cleanup and abatement order No. R9-2002-201 (the 2002 CAO). The 2002 CAO set deadlines for submittal by S&K and Ametek of a comprehensive feasibility study for cleanup and abatement strategies for chlorinated solvents in groundwater and residual waste in soil at the site.

B. *HHRA Order (July 15, 2003)*

On July 15, 2003, the Regional Board issued the HHRA order[4] pursuant to its authority under section 13267, requiring appellants to furnish to the Board by a certain date a technical report evaluating whether vapors containing volatile organic compounds from wastes in the soil and groundwater beneath the site posed an unacceptable health risk to the employees at the site.

The HHRA order set forth several findings by the Regional Board: (1) An HHRA had never been performed at the site; (2) Senior Flexonics currently operates an aerospace and electronics manufacturing business at the site 24 hours a day, seven days a week; (3) portions of the occupied buildings overlie areas of significant groundwater pollution and contamination; (4) a potential exists for chlorinated solvent vapors to migrate upwards into the buildings;

---

[4] Investigation order No. R9-2003-272.

(5) inhalation of such vapors could expose workers to an unacceptable risk at the site; (6) an HHRA report, using site-specific data, is needed to determine whether or not a risk to the employees exists due to inhalation of chlorinated solvent vapors as a result of the discharge of wastes at the site; and (7) a recent change to the cancer slope for TCE had been suggested by region IX of the USEPA,[5] and the updated USEPA region IX 2002 remediation goals for TCE were significantly lower than the previously adopted values. In the HHRA order, the Regional Board also found that it needed the HHRA report as part of its investigation and protection of human health at the site, that without this report it could not ensure that chlorinated solvent concentrations in soil and groundwater beneath the site "will be protective of human health," and that the burden on appellants of producing the HHRA report was "not unreasonable in view of the risks associated with exposure to these chemicals and bears a reasonable relationship to the need for the report . . . ."

### C. *August 13, 2003 Petition for Review*

On August 13, 2003, appellants challenged the HHRA order by filing a petition for review with the State Board (August 13 petition for review). In their petition, appellants asserted that the HHRA ordered by the Regional Board was an unnecessary, costly, and "standardless" exercise. They also asserted that the HHRA order undermined a recent settlement agreement that was reached during mediation in July 2002 and conflicted with the "negotiated" 2002 CAO (discussed, *ante*). In the petition, appellants stated that they "request a hearing for the purposes of presenting additional evidence."

### D. *S&K's September 2003 Correspondence with the Regional Board*

On September 8, 2003, in an e-mail to the Regional Board's chairman, S&K's president challenged the HHRA order, stating that the 2002 CAO set forth all of the "negotiated set of milestones" and tasks that "were needed to finalize the work at the site," but the HHRA order "demand[ed] additional work not contemplated in the 2002 [CAO]." S&K's president informed the Regional Board that "[w]e have appealed the [HHRA order]," and stated, "I can only come to the conclusion that your staff's breach of the agreement leaves us but *two options*. With the Board's concurrence, *I would agree to go back to [the mediator]* to see if our differences can be resolved, or if you refuse that option, we will be forced to return back to the courts for an unbiased handling of this matter." (Italics added.) The e-mail concluded with the statement, "*I hope that you and the Board will choose mediation.*" (Italics added.)

---

[5] USEPA appears to be an acronym for the United States Environmental Protection Agency.

Two days later, on September 10, the Regional Board's chairman replied in writing, stating: "I regret that the disagreements cannot be resolved without presenting them to the Board for formal decision making. I have asked [executive officer] John Robertus to examine the facts and bring this matter before the Board as appropriate."

 1. *September 11, 2003 letter request for further mediation and date extension*

On September 11, 2003, while the August 13 petition for review was pending, appellants' counsel wrote a letter (the September 11 letter) to the Regional Board's executive officer, Robertus, requesting (1) a written response to a recent request by S&K for further mediation regarding "significant disagreements" concerning the "mediated Order"; and (2) an extension of the due date for submission of "a work plan for [an HHRA]."

 2. *Robertus's September 19, 2003 written response*

On September 19, 2003, Robertus responded to the September 11 letter on behalf of the Regional Board by sending to appellants' counsel a letter (the September 19 letter) giving reasons why further mediation was "not appropriate" and stating that "the mediation that concluded with the issuance of [the 2002 CAO] . . . does not limit the Regional Board from issuing further enforcement or other directives outside the scope of the [the 2002 CAO] as necessary."

With respect to the issuance of the HHRA order, the September 19 letter stated that "new information obtained earlier this year, clearly after the mediation in July 2002, suggests that a potential risk may exist to employees at the former Ketema facility (now Senior Flexonics) to chlorinated vapors from the high dissolved concentrations of chlorinated solvents in ground water beneath the facility." Acknowledging that "two HHRA reports have previously been completed (1994 and 1997) at the elementary school next door to the former Ketema facility," the September 19 letter also stated that an HHRA "has never been performed at the facility where [Senior Flexonics] operates 24 hours a day/7 days a week." It explained that in a March 2003 conversation between the Regional Board's staff and toxicologists at the DTSC regarding TCE values, the toxicologists expressed concern that an HHRA had not been completed at the facility where the groundwater concentrations of the chlorinated solvents were highest and stated that it was standard practice to have an HHRA performed "at a facility of this magnitude."

The September 19 letter also asserted that "[e]arlier this year staff became aware of recent studies published by the National Center for Environmental

Assessment . . . and recent revisions to the USEPA Region IX 2002 Preliminary Remediation Goals . . . for [TCE]. Based on more stringent toxicity criteria, sustained and/or increasing solvent concentrations in on-site wells, and the fact that a[n] HHRA has never been performed at the facility, a[n] HHRA for the facility is prudent and necessary."

### E. *S&K's September 30, 2003 Geomatrix Evaluation Submitted to the Board*

On September 30, 2003, Geomatrix Consultants, Inc.—an engineering, geology and environmental science consulting firm—submitted to the Regional Board on behalf of S&K a written screening evaluation (the Geomatrix evaluation)—titled "Screening Health Risk Evaluation of [TCE] in Indoor Air, Former Ketema Site, El Cajon, California"—stating that it had conducted a "screening evaluation of potential health risks via inhalation exposure to [TCE] at the [site] based on air sampling data collected at the adjacent Magnolia School," and the results of the evaluation indicated that "the potential health risks to workers from inhalation of TCE volatilized from groundwater at the Site are likely to be below regulatory levels of concern." Referring to the HHRA order, the Geomatrix evaluation suggested that the HHRA order was unnecessary, concluding that "additional air measurements at the Site would not demonstrate a significant health risk to workers from TCE in groundwater."

### F. *November 13, 2003 Petition for Review*

On November 13, 2003, while appellants' August 13 petition for review (discussed, *ante*) was still pending, appellants filed a second petition for review with the State Board (November 13 petition for review), in which appellants complained that the Regional Board had *failed to act on the requests set forth in the September 11 letter* and asked the State Board to issue an order requiring the Regional Board to live up to the terms of the mediated unwritten settlement agreement and the 2002 CAO. The November 13 petition for review stated that the Regional Board's staff had rejected appellants' "good faith efforts to seek redress through mediation or before the Regional Board," the HHRA order violated the settlement agreement and conflicted with the "negotiated" 2002 CAO, the HHRA order required appellants to "pay . . . for an assessment which has been performed twice before *at the site* (and which indicated no risk)," and appellants had submitted an analysis by expert toxicologists indicating that the third HHRA was unwarranted.

### G. *State Board's Denial of the August 13 and November 13 Petitions for Review*

In mid-November 2003, the State Board denied the November 13 petition for review. In late December 2003, the State Board denied the August 13 petition for review.

### H. *Appellants' Three Lawsuits Against the Regional Board*

In mid-December 2003, appellants challenged the HHRA order (based on the State Board's denial of their Nov. 13 petition for review) by filing in the superior court a verified petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5.[6]

On January 26, 2004, in a separate action, appellants again challenged the HHRA order (based on the State Board's denial of their Aug. 13 petition for review) by filing a second verified petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5.[7]

That same day, appellants filed a third lawsuit against the Regional Board seeking damages, declaratory relief and specific performance based on the Regional Board's alleged breach of an unwritten settlement agreement that appellants claim they and the Regional Board entered into as a result of the July 2002 mediation.[8] After the court consolidated the three lawsuits, all of appellants' claims for damages against the Regional Board in the third lawsuit were dismissed following demurrer, motion to strike, and summary judgment proceedings. In mid-April 2005, appellants later dismissed their remaining claims for declaratory relief and specific performance in the third lawsuit, *Schutte & Koerting, Inc. v. Regional Water Quality Control Bd., supra*, GIC824707.

### I. *Operative Amended Petition for Writ of Administrative Mandamus*

Thereafter, the court permitted appellants to file an amended pleading consolidating their two pending petitions for writ of administrative mandamus (Nos. GIC822750 & GIC824706). In early May 2005, appellants filed under Code of Civil Procedure section 1094.5 their operative second amended verified petition for writ of administrative mandamus (hereafter amended petition), which is the subject of this appeal.

---

[6] San Diego County Superior Court No. GIC822750.

[7] San Diego County Superior Court No. GIC824706.

[8] *Schutte & Koerting, Inc. v. Regional Water Quality Control Bd.* (Super. Ct. San Diego County, No. GIC824707).

In their amended petition, appellants deleted language relating to an alleged oral settlement agreement. They alleged that their counsel sent the September 11 letter to Robertus "requesting a hearing before the Regional Board to resolve issues pertaining to the Regional Board's orders" and that they submitted to the Regional Board the Geomatrix evaluation, which indicated that a third HHRA, required under the HHRA order, was "unwarranted." Appellants also alleged that the Regional Board failed to act both on the Geomatrix evaluation and their request for a hearing.

Alleging further in their amended petition that they had exhausted their administrative remedies, appellants requested a peremptory writ of mandamus ordering that the Regional Board set aside the HHRA order on the grounds that the Regional Board proceeded without jurisdiction, deprived them of a fair trial, and prejudicially abused its discretion by (1) failing to hold a hearing upon their request, (2) failing to determine the validity of their challenge to the HHRA order, and (3) failing to act on the Geomatrix evaluation.

*Denial of the amended petition*

Following a hearing, the court issued a written order denying the amended petition, finding there was no evidence to show that appellants had requested a hearing before the Regional Board, and appellants had failed to identify and present to the court any issues within the court's jurisdiction under Code of Civil Procedure section 1094.5. This appeal followed.

STANDARD OF REVIEW

Code of Civil Procedure section 1094.5 governs judicial review by administrative mandate of any final decision or order rendered by a state or local agency. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 137 [93 Cal.Rptr. 234, 481 P.2d 242].) Subdivision (b) of section 1094.5 provides that judicial review of such an order "shall extend to the questions whether the [administrative agency] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the [administrative agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." When a petition for a writ of administrative mandamus contends the administrative record does not support the findings, the trial court examines the record using either an independent judgment or a substantial evidence standard of review. (Code Civ. Proc., § 1094.5, subd. (c); *Bixby v. Pierno, supra,* 4 Cal.3d at pp. 137, 143–144; *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 51–52 [76 Cal.Rptr.2d 356]; *Mann v. Department of Motor Vehicles* (1999) 76

Cal.App.4th 312, 320 [90 Cal.Rptr.2d 277].) There is a presumption the agency's findings are supported by substantial evidence, and appellants have the burden of demonstrating otherwise. (*Ghilotti Construction Co. v. City of Richmond* (1996) 45 Cal.App.4th 897, 903 [53 Cal.Rptr.2d 389].) "We may not reweigh the evidence and must view it in the light most favorable to the [agency's] actions, indulging all reasonable inferences in support of those actions." (*Ibid.*)

## DISCUSSION

Appellants contend the judgment denying their amended petition must be reversed because (1) the Water Code expressly authorizes judicial review of "any" Regional Board order, and not just orders issued following a hearing, and thus that code does not require a hearing before or after the Regional Board issues an order; and (2) the court's ruling that appellants have a right to independent judicial review of the HHRA order only if the Regional Board held a hearing is thus wrong as a matter of law and deprived them of their statutory right to de novo judicial review and their constitutional right to due process. For reasons we shall discuss, we reverse the judgment.

■ Resolution of an issue of statutory interpretation, such as the one presented here, is governed by well-established principles. "The objective of statutory construction is to determine the intent of the enacting body so that the law may receive the interpretation that best effectuates that intent. [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233].) The interpretation of a statute presents a question of law subject to de novo appellate review. (*CBS Broadcasting Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 906 [110 Cal.Rptr.2d 889].)

■ We are asked to construe provisions of the Porter-Cologne Water Quality Control Act (§ 13000 et seq.), which "establishes a statewide program of water quality control that is maintained through regional administration within the framework of statewide coordination and policy." (*Johnson v. State Water Resources Control Bd.* (2004) 123 Cal.App.4th 1107, 1112 [20 Cal.Rptr.3d 441].)

Appellants principally rely on section 13330, subdivision (b) (hereafter section 13330(b)), which governs their right to seek judicial review of the HHRA order. Section 13330(b) provides: "Any party aggrieved by a final decision or order of a regional board *for which the state board denies review* may obtain review of the decision or order of the regional board in the superior court by filing in the court a petition for writ of mandate *not later than 30 days from the date on which the state board denies review*." (Italics added.)

■ The foregoing language of section 13330(b) plainly and unambiguously authorizes any party aggrieved by a final order of the Regional Board (such as the HHRA order) "for which the state board denies review" to seek judicial review of that order by filing a petition for writ of mandate in superior court "not later than 30 days from the date on which the state board denies review." The issue we must decide is whether such an aggrieved party, in order to exhaust its administrative remedies as a prerequisite to seeking judicial review, must first request a hearing before the regional board.[9]

■ The California Supreme Court has explained that " '[t]he requirement of exhaustion of administrative remedy is founded on the theory that the administrative tribunal is created by law to adjudicate the issue sought to be presented to the court, and the issue is within its special jurisdiction. If a court allows a suit to go forward prior to a final administrative determination, it will be interfering with the subject matter of another tribunal. [Citation.] Consequently, the requirement of exhaustion is a jurisdictional prerequisite, not a matter of judicial discretion. [Citation.] [¶] 'The exhaustion doctrine . . . operates as a defense to litigation commenced by persons who have been aggrieved by action taken in an administrative proceeding which has in fact occurred but who have failed to "exhaust" the remedy available to them in the course of the proceeding itself. [Citation.]' [Citation.]" (*Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 589 [96 Cal.Rptr.2d 880].)

■ Section 13330(b) is silent on the issue of whether an aggrieved party seeking judicial review of a final regional board order or decision, in order to

[9] Here, appellants specifically alleged in their amended petition that their counsel's September 11 letter to Robertus *"request[ed] a hearing before the Regional Board to resolve issues pertaining to the Regional Board's orders,"* and that they submitted to the Regional Board the Geomatrix evaluation, which indicated that the HHRA required by the HHRA order was "unwarranted." (Italics added.) Appellants further alleged the Regional Board failed to act both on their request for a hearing and the Geomatrix evaluation. A review of the September 11 letter, however, shows it did *not* contain a request for a hearing before the Regional Board. Rather, the September 11 letter requested a written response to a recent request by S&K for further mediation regarding "significant disagreements" concerning the "mediated Order," and an extension of a due date for submission of "a work plan for [an HHRA]."

exhaust its administrative remedies, must first request a hearing before the regional board, and is thus devoid of any regional board hearing requirement. The phrases "for which the state board denies review" and "not later than 30 days from the date on which the state board denies review" in section 13330(b) plainly indicate the Legislature's intent that the aggrieved party need only exhaust its State Board administrative review remedy. That remedy is separately set forth in section 13320, subdivision (a) (hereafter section 13320(a)), which authorizes any person aggrieved by a regional board's action or failure to act under specified statutory provisions to petition the state board, within specified time limits, for review of that action or failure to act.[10]

Here, it is undisputed that appellants exhausted the administrative remedy prescribed in section 13330(b) by unsuccessfully petitioning the State Board for review under section 13320(a).

The Board maintains that a regional board hearing requirement may be found in the provisions of Code of Civil Procedure section 1094.5. Implicitly referencing subdivision (d) of section 13330 (hereafter section 13330(d)), the Board asserts that "[a]lthough . . . section 13330 does not reference a 'hearing' in its provisions, the statute *expressly requires* that all actions seeking judicial review of Regional Board orders are subject to 'the provisions of Code of Civil Procedure section 1094.5.' " (Italics added.) Citing subdivision (a) of Code of Civil Procedure section 1094.5,[11] the Board asserts that "any writ petition brought under . . . section 13330 may be brought only when the party challenging the order has perfected its rights to challenge the administrative order by *seeking a hearing* to present all substantive claims and supporting evidence so that the Regional Board has an opportunity to consider the claims and to exercise its discretion." (Italics added.) The Board

---

[10] Section 13320(a) provides: "*Within 30 days of any action or failure to act by a regional board* under subdivision (c) of Section 13225, Article 4 (commencing with Section 13260) of Chapter 4, Chapter 5 (commencing with Section 13300), Chapter 5.5 (commencing with Section 13370), Chapter 5.9 (commencing with Section 13399.25), or Chapter 7 (commencing with Section 13500), *any aggrieved person may petition the state board to review that action or failure to act.* In case of a failure to act, the 30-day period shall commence upon the refusal of the regional board to act, or 60 days after request has been made to the regional board to act. The state board may, on its own motion, at any time, review the regional board's action or failure to act and also any failure to act under Article 3 (commencing with Section 13240) of Chapter 4." (Italics added.)

[11] Code of Civil Procedure section 1094.5, subdivision (a) provides in part: "Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made *as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior* tribunal, corporation, *board,* or officer, the case shall be heard by the court sitting without a jury." (Italics added.)

also asserts that "[o]nly after an aggrieved party has complied with these requirements is that party entitled to seek judicial review under . . . section 13330."

The Board's assertions and its apparent reliance on section 13330(d) are unavailing. Section 13330(d)[12] provides in part that Code of Civil Procedure section 1094.5 "shall govern" a proceeding for which a petition is filed under section 13330, and that the trial court "shall exercise its independent judgment on the evidence in any case involving the judicial review of a decision or order of the state board issued under Section 13320, or a decision or order of a regional board for which the state board denies review under Section 13320 . . . ." However, like section 13330(b) (discussed, *ante*), section 13330(d) itself makes no express mention of any regional board hearing requirement. Had the Legislature intended to require an aggrieved party to exhaust its administrative remedies by seeking a hearing before a regional board, it could easily have so provided in section 13330. Again, the Legislature's failure to expressly provide for such a requirement evinces its intent to authorize an aggrieved party to seek judicial review without seeking or obtaining a hearing before the Regional Board, so long as the other express requirements set forth in section 13330 (discussed, *ante*) have been met.

█ Because section 13330(b) requires exhaustion of administrative remedies before the State Board, but is silent with respect to exhaustion of any remedies before the Regional Board, we conclude that a party who is aggrieved by a final decision or order of a regional board, and who has exhausted its administrative remedies before the State Board and has acted within the time limits specified in that section, may obtain judicial review without seeking or obtaining a hearing before the Regional Board. Accordingly, we also conclude the court committed reversible error by denying appellants' writ petition on the ground the Regional Board did not hold an administrative hearing relating to the challenged HHRA order.

---

[12] Section 13330(d) provides in full: "Except as otherwise provided herein, Section 1094.5 of the Code of Civil Procedure *shall govern* proceedings for which petitions are filed pursuant to this section. For the purposes of subdivision (c) of Section 1094.5 of the Code of Civil Procedure, the court *shall exercise its independent judgment on the evidence in any case involving the judicial review of a decision or order of the state board issued under Section 13320*, or a decision or order of a regional board for which the state board denies review under Section 13320, other than a decision or order issued under Section 13323." (Italics added.)

Subdivision (c) of section 1094.5 of the Code of Civil Procedure, in turn, provides: "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

## DISPOSITION

The judgment is reversed and the matter is remanded for an adjudication on the merits of appellants' petition for writ of administrative mandamus. Appellants shall recover their costs on appeal.

Haller, J., and O'Rourke, J., concurred.