Filed 1/14/16  Nabizadeh v. Physical Therapy Board of CA CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ALI REZA NABIZADEH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PHYSICAL THERAPY BOARD OF CALIFORNIA, DEPARTMENT OF CONSUMER AFFAIRS,<br><br>    Defendant and Respondent. | D067005<br><br><br><br>(Super. Ct. No.<br>  37-2013-00080242-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.

Khouri Law Firm, Michael J. Khouri and Yelena Bakman for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Gloria L. Castro, Assistant Attorney General, Alexandra M. Alvarez and Lori Jean Forcucci, Deputy Attorneys General, for Defendant and Respondent.

Ali Reza Nabizadeh appeals a judgment denying his petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5 challenging a decision of the Physical Therapy Board of California (Board) revoking his physical therapy license. On appeal, he contends the trial court erred because (1) the evidence is insufficient to support the court's findings, and (2) Board abused its discretion by disciplining him by revoking his license. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2010, Nabizadeh was arrested by Immigration and Customs Enforcement (ICE) agents and Orange County narcotics officers in connection with a controlled delivery of a postal package shipped from Canada containing about 1,900 MDMA, or Ecstasy, pills with a street value of about $60,000. He consented to a search of his residence, forewarning officers they would find gamma-hydroxybutyric acid (GHB) in his freezer. Officers found GHB in his freezer and also found amphetamines, steroids, and other liquids and tablets in his residence for which he did not have current, valid prescriptions.

On August 27, 2010, Nabizadeh signed an application for a physical therapy license, stating, in part, he had never pleaded guilty or nolo contendere to any offense. On November 29, Board issued a physical therapy license to him.

On December 9, a felony complaint was issued against Nabizadeh, charging him with two felonies (i.e., possession for sale of MDMA/Ecstasy and possession for sale of GHB). On October 4, 2011, after the complaint had been amended to add a charge of

2

misdemeanor accessory after the fact of possession of MDMA (Pen. Code, § 32), Nabizadeh entered into a plea agreement pursuant to which he pleaded guilty to that misdemeanor count; the two felony counts were dismissed. He was granted probation and ordered to serve 90 days in local custody.

On October 5, 2012, Board filed an accusation against Nabizadeh, alleging six causes for discipline: (1) conviction of a crime substantially related to the qualifications, functions, or duties of a physical therapist; (2) violation of state statutes regulating dangerous drugs or controlled substances; (3) falsely representing oneself as a doctor; (4) commission of fraudulent, dishonest, or corrupt act or acts; (5) violation of a provision or provisions of the Physical Therapy Practice Act; and (6) violation of a provision or provisions of the Medical Practice Act. In October 2013, a two-day administrative hearing was held before administrative law judge (ALJ) Roy Hewitt. The ALJ heard the testimony of Scott Irwin, who in 2010 was a narcotics detective with the La Habra Police Department, Nabizadeh, and three character witnesses for Nabizadeh.

Irwin testified he was contacted by ICE agents regarding their interception of a postal package containing about 1,900 Ecstasy pills addressed to "Chad Julian," at a store located in the City of Orange.[1] He posed undercover as a customer at that store while an undercover postal inspector delivered the package to Gabriel Rudd, the store's counter clerk. Rudd said, "[T]hat must be for Chad," and signed for the package. La Habra

---

[1] Irwin testified it is common for alias names to appear on contraband packages. Mark Kaelin, one of Nabizadeh's character witnesses, testified Nabizadeh told him the name Chad Julian was "made up."

3

Police Detective Torres identified himself to Rudd and told him he was being detained for further investigation regarding the package. Rudd identified Nabizadeh as the intended recipient of the package, stating Nabizadeh promised to pay him $200 to accept delivery of it. At Torres's suggestion, Rudd called Nabizadeh and told him his package had arrived and was waiting for him to pick it up as they had arranged. Within 15 minutes, Nabizadeh arrived at the store, picked up the package, walked outside, and was arrested. On his arrest, Nabizadeh spontaneously stated, "Oh no, I screwed up, I'm a doctor and I made a mistake." He subsequently spontaneously stated, "Sir, I'm a doctor and I messed up, there are Ecstasy pills inside, I got caught, but I can't go to jail, I'll do anything, I'm not a drug dealer."

Nabizadeh suggested, and the officers agreed, that he be questioned at his apartment, a less public place, and he was read his *Miranda*[2] rights there. At his apartment, Nabizadeh told officers he had arranged with Rudd to have him to accept delivery of a package (which Nabizadeh knew would contain Ecstasy pills from Canada) with a fake name on it (i.e., "Chad Julian") at the store and to notify him immediately on its delivery. In return, he would pay Rudd $200. He told Rudd there would be illegal pills inside the package, but did not specify what type.

In addition to the 1,900 MDMA pills in the postal package, officers found GHB and a bag containing about 2,000 pills. Laboratory testing showed those pills included three methamphetamine tablets (indicated, but not confirmed), 400 oxymetholone tablets,

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

394 methenolone tablets, 797 stanozolol tablets, and 400 placebo tablets. Officers also found four syringes of liquid steroids, 10 bottles of somatropin, three bottles of testosterone, a vial of Nandrodex (nandrolone phenpropionate), and six vials of Primodex (methenoline enanthate and mestererlone), all of which were indicated, but not confirmed.

Nabizadeh testified he received a call from Rudd, his friend, asking for a ride from the store. When he arrived at the store, Rudd handed him a package and officers immediately arrested him. Nabizadeh admitted he knew the package most likely contained Ecstasy when he picked it up because he knew what Rudd and another friend had done. Nabizadeh denied ordering the Ecstasy from Canada.

Following the hearing, the ALJ issued a proposed decision finding cause for discipline of Nabizadeh on all six alleged causes. He found Nabizadeh's testimony was not credible and he was not a truthful person. He also found: "The only reasonable explanation that accounts for all of the facts underlying [his] conviction is that [he] was the individual who arranged for the purchase and shipment of the [E]cstasy pills from Canada. . . . [H]is overall acts and insistence on misrepresenting the facts lead to the conclusion that he cannot be trusted, and is not an appropriate candidate for probation." The ALJ recommended that Board revoke Nabizadeh's physical therapy license. Effective December 26, 2013, Board adopted the ALJ's proposed decision as its decision and revoked Nabizadeh's physical therapy license.

Nabizadeh filed a petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5 challenging Board's decision to revoke his physical therapy license.[3]  The trial court issued an order denying his petition and finding Board's decision was supported by the weight of the evidence in the administrative record.  On November 24, 2014, the court entered a judgment denying his petition.  Nabizadeh timely filed a notice of appeal challenging the judgment.

DISCUSSION

I

*Standards of Review*

Code of Civil Procedure section 1094.5, subdivision (c), provides that in cases in which the court is authorized by law to exercise its independent judgment on the evidence (e.g., cases challenging the revocation of a professional license or other decisions substantially affecting a fundamental vested right), abuse of discretion by the administrative agency is established if the court determines the agency's findings are not supported by the weight of the evidence.  (*Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 967, fn. 1; *Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395-396.)  "In reviewing a trial court's ruling on a petition for writ of mandate following an administrative decision to impose discipline on the holder of a

---

3    Although the record on appeal does not contain a copy of the petition for writ of administrative mandamus, the parties represent, and the record supports an inference, Nabizadeh filed that petition challenging Board's decision.  It would, of course, have been the better practice for Nabizadeh to have included a copy of his petition in the record on appeal.

6

professional license, 'an appellate court's function "is solely to decide whether credible, competent evidence supports [the trial] court's judgment." [Citation.] The trial court's legal conclusions, however, are open to [de novo] appellate review for errors of law. [Citation.]' " (*The Grubb Co., Inc. v. Department of Real Estate* (2011) 194 Cal.App.4th 1494, 1502.)

"On appeal, we review the trial court's factual findings under the substantial evidence test if the trial court exercised its independent judgment. [Citation.] [¶] Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible, and of solid value. We view the evidence in the light most favorable to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence. The evidence is sufficient to support a factual finding only if an examination of the entire record viewed in this light discloses substantial evidence to support the finding." (*Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 99.) "There is a presumption the agency's findings are supported by substantial evidence, and appellants have the burden of demonstrating otherwise." (*Schutte & Koerting, Inc. v. Regional Water Quality Control Bd.* (2007) 158 Cal.App.4th 1373, 1384.)

In contrast, "[i]n reviewing the severity of the discipline imposed, we look to the correctness of the agency's decision rather than that of the trial court. We review the actions of the [administrative agency] to determine whether the discipline imposed constituted a manifest abuse of discretion. [Citations.] 'The penalty imposed by an

administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated.  [Citations.]  Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.  [Citation.]' "  (*Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 217-218.)  "In medical [or other health services provider] discipline cases, the 'highest priority' is protection of the public."  (*Id*. at p. 218.)  The purpose of the Physical Therapy Practice Act is to protect the public.  (Bus. & Prof. Code, § 2602.1.)[4]

II

*Substantial Evidence to Support Trial Court's Findings*

Nabizadeh contends the evidence is insufficient to support the trial court's findings on the causes for discipline alleged against him.

A

*First cause for discipline*.  The first cause for discipline alleged Nabizadeh had been convicted of a crime substantially related to the qualifications, functions, or duties of a physical therapist.  (§ 2660, subd. (e).)  The record contains conclusive evidence that he pleaded guilty to, and was convicted of, the misdemeanor offense of being an accessory after the fact of possession of MDMA, an analog of methamphetamine, in violation of Penal Code section 32.  There is substantial evidence to support the trial

---

[4]    All statutory references are to the Business and Professions Code unless otherwise specified.

court's finding that crime is substantially related to the qualifications, functions, or duties of a physical therapy licensee.

California Code of Regulations, title 16, section 1399.20, defines a "substantial relationship" between a crime and the qualifications, functions, and duties of a physical therapist, stating: "[A] crime . . . shall be considered to be substantially related to the qualifications, functions or duties of a person holding a license under the Physical Therapy Practice Act if to a substantial degree it evidences present or potential unfitness of a person to perform the functions authorized by the license in a manner consistent with the public health, safety or welfare. Such crimes . . . shall include but not be limited to the following: [¶] (a) Violating . . . any provision or term of the Physical Therapy Practice Act. [¶] . . . [¶] (c) Violating . . . any provision or term of the Medical Practice Act." (Cal. Code Regs., tit. 16, § 1399.20.) Nabizadeh's crime violated both the Physical Therapy Practice Act and the Medical Practice Act. The Medical Practice Act (§ 2000 et seq.) provides that a violation of "any of the statutes or regulations of this state regulating dangerous drugs or controlled substances constitutes unprofessional conduct" in violation of that act. (§ 2238.) Based on our independent interpretation of that provision, it is clear a Penal Code section 32 offense for being an accessory after the fact to possession of MDMA is a statute that regulates dangerous drugs or controlled substances. Therefore, Nabizadeh's Penal Code section 32 offense violated the Medical Practice Act. (§ 2238.) Based on that conclusion, his offense also violated the Physical Therapy Practice Act. (§ 2600 et seq.) Unprofessional conduct under the Physical Therapy Practice Act

9

includes any violation of the Medical Practice Act. (§ 2660, subd. (a).) Because his crime violated the Medical Practice Act, it also violated the Physical Therapy Practice Act. Substantial evidence supports the trial court's finding that Nabizadeh's crime was substantially related to the qualifications, functions, or duties of a physical therapist. (§ 2660, subd. (e); Cal. Code Regs., tit. 16, § 1399.20.)

Furthermore, there is substantial evidence to support the court's additional, or alternative, finding his crime is substantially related to the qualifications, functions, or duties of a physical therapist because, to a substantial degree, it provides evidence of present or potential unfitness to perform the functions authorized by the license in a manner consistent with the public health, safety, or welfare. "The practice of physical therapy includes the promotion and maintenance of physical fitness to enhance the bodily movement related to health and wellness of individuals through the use of physical therapy interventions." (§ 2620, subd. (a).) The circumstances underlying Nabizadeh's crime support an inference that he disregarded the promotion and maintenance of physical fitness and the health and wellness of individuals. The circumstances show he was involved in the illegal trafficking and promotion of MDMA/Ecstasy, which, according to evidence in the record, can cause psychological and physical harm. His apparent complicity with others in the illegal possession, if not illegal importation, of MDMA/Ecstasy not only shows indifference to the health of those who might consume those drugs, but also contempt for the law by his failure to report their delivery to police. To the extent Nabizadeh argues his crime had nothing to do with his job providing

10

physical therapy to patients, it is well established the nexus between misconduct and discipline "does not require a finding of an actual adverse impact on the past day-to-day practice of medicine [or physical therapy], but may be satisfied by a potential for such adverse impact in the future." (*Watson v. Superior Court* (2009) 176 Cal.App.4th 1407, 1415.) The trial court reasonably inferred that Nabizadeh's conduct adversely impacted, or could potentially adversely impact, his practice of physical therapy. There is substantial evidence to support the court's finding the weight of the evidence supported the first cause for discipline. (§ 2660, subd. (e); Cal. Code Regs., tit. 16, § 1399.20.)

B

*Second cause for discipline.* The second cause for discipline alleged Nabizadeh violated state statutes regulating dangerous drugs or controlled substances in that he unlawfully possessed controlled substances in violation of Health and Safety Code sections 11350 and 11377. (§ 2660, subd. (f).) The Physical Therapy Practice Act defines unprofessional conduct as including the unlawful possession or use of, or conviction of a criminal offense involving, a controlled substance or any dangerous drug. (§ 2660, subd. (f).) The record shows MDMA/Ecstasy is a controlled substance under the Federal Controlled Substances Act. The record also supports a finding by the trial court that Nabizadeh knowingly took possession of, or at least was an accessory after the fact in the possession of, MDMA/Ecstasy. He was also found in possession of GBH, amphetamines, and steroids for which he did not have current, valid prescriptions. There is substantial evidence to support the trial court's finding the weight of the evidence

11

supported the second cause for discipline.  (§§ 2238, 2660, subd. (f); Cal. Code Regs., tit. 16, § 1399.20.)

C

*Third cause for discipline*.  The third cause for discipline alleged Nabizadeh falsely represented himself as a doctor.  The Medical Practice Act prohibits persons from holding themselves out as physicians and surgeons unless they have a valid certificate as a physician and surgeon.  (§ 2054.)  A violation of the Medical Practice Act is also a violation of the Physical Therapy Practice Act.  (§ 2660, subd. (a); Cal. Code Regs., tit. 16, § 1399.20, subd. (c).)  At the administrative hearing, Irwin testified, and Nabizadeh admitted, he (Nabizadeh) stated to police he was a "doctor."  Nabizadeh admitted at the administrative hearing that he made the following statement to police: "Oh no, I screwed up, I'm a doctor, I made a mistake . . . ."  The trial court could reasonably infer that statement and his other like statements constituted holding himself out to be a physician in violation of the Medical Practice Act.  Accordingly, there is substantial evidence to support the court's finding the weight of the evidence supported the third cause for discipline.  (§§ 2054, 2660, subd. (a); Cal. Code Regs., tit. 16, § 1399.20.)

D

*Fourth cause for discipline*.  The fourth cause for discipline alleged Nabizadeh committed a fraudulent, dishonest, or corrupt act.  (§ 2660, subd. (j).)  Evidence in the record supports the reasonable inference by the trial court that Nabizadeh was involved in the trafficking of about $60,000 in MDMA/Ecstasy into the United States from Canada

and that, in so doing, he committed fraudulent, dishonest, or corrupt act or acts.  There is substantial evidence to support the court's finding the weight of the evidence supported the fourth cause for discipline.  (§ 2660, subd. (j); Cal. Code Regs., tit. 16, § 1399.20, subd. (a).)

E

*Fifth cause for discipline*.  The fifth cause for discipline alleged Nabizadeh violated a provision of the Physical Therapy Practice Act by committing the acts alleged in the first four causes for discipline.  (§ 2660, subd. (a); Cal. Code Regs., tit. 16, § 1399.20, subd. (a).)  The trial court found the weight of the evidence supported the finding Nabizadeh violated the Physical Therapy Practice Act based on his Penal Code section 32 conviction, violations of statutes concerning controlled substances, and violations of the Medical Practice Act discussed above.  (§§ 2054, 2238, 2620, subd. (a), 2660, subds. (a), (e), (f), (j); Cal. Code Regs., tit. 16, § 1399.20.)  Based on our discussion above, we conclude there is substantial evidence to support the court's finding the weight of the evidence supported the fifth cause for discipline.

F

*Sixth cause for discipline*.  The sixth cause for discipline alleged Nabizadeh violated a provision of the Medical Practice Act by committing the acts alleged in the first four causes for discipline.  (§ 2660, subd. (a); Cal. Code Regs., tit. 16, § 1399.20, subd. (c).)  The trial court found the weight of the evidence supported the finding Nabizadeh violated the Medical Practice Act based on his holding himself out as a doctor

13

to police, as discussed above, in violation of section 2054. Based on our discussion above, we conclude there is substantial evidence to support the court's finding the weight of the evidence supported the sixth cause for discipline (§§ 2054, 2660, subd. (a); Cal. Code Regs., tit. 16, § 1399.20, subd. (c).)

G

To the extent Nabizadeh cites only evidence, and inferences therefrom, favorable to him, he misconstrues and/or misapplies the substantial evidence standard of review and does not persuade us there is insufficient evidence to support the trial court's findings. Furthermore, he did not set forth in his appellant's opening brief *all* the material evidence, and not merely evidence favorable to him, relevant to the trial court's findings on the six causes for discipline alleged against him. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) "In furtherance of its burden, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment. [Citation.] Further, the burden to provide a fair summary of the evidence 'grows with the complexity of the record. [Citation.]' " (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.) An appellant must state fully, with transcript citations, the evidence claimed to be insufficient to support the trial court's findings. (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.) Unless this is done, the asserted error is deemed to be waived. (*Foreman & Clark Corp.*, at p. 881.) "An appellate court will consider the sufficiency of the evidence to support a given finding only after a party tenders such an issue together with a fair summary of the evidence bearing on the challenged finding, particularly including

evidence that arguably *supports* it." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409-410.) Furthermore, "[a] party who challenges the sufficiency of the evidence to support a finding *must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable*." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218, italics added.) If the appellant does not do so, the reviewing court may deem the substantial evidence contention waived. (*Ibid*.; *Foreman & Clark Corp.*, at p. 881.)

Based on our review of the record on appeal, it is clear that Nabizadeh has not set forth a sufficient statement of facts stating *all* of the *material* evidence, both favorable and unfavorable, to his position on the disputed issues. Rather, he appears to have cited only evidence favorable to his position. Because Nabizadeh has not presented us with a sufficient statement of facts setting forth all the material evidence on the disputed issues, we *could* have deemed him to have waived or forfeited his contention that there is insufficient evidence to support the trial court's findings. (*Foreman & Clark Corp. v. Fallon*, *supra*, 3 Cal.3d at p. 881; *Huong Que, Inc. v. Luu*, *supra*, 150 Cal.App.4th at pp. 409-410; *Doe v. Roman Catholic Archbishop of Cashel & Emly*, *supra*, 177 Cal.App.4th at p. 218.) However, because, as discussed above, we conclude there is substantial evidence in the record on appeal to support the trial court's findings, we need not decide whether Nabizadeh waived or forfeited his substantial evidence contention. Nabizadeh has not carried his burden on appeal to persuade us there is insufficient

evidence to support the court's findings. (*Schutte & Koerting, Inc. v. Regional Water Quality Control Bd.*, *supra*, 158 Cal.App.4th at p. 1384.)

III

*Revocation of Nabizadeh's Physical Therapy License*

Nabizadeh contends Board abused its discretion by revoking his physical therapy license rather than imposing a lesser form of discipline for his misconduct. He argues Board imposed the highest form of discipline (i.e., revocation) for the improper purpose of punishing him rather than for the proper purpose of protecting the public.

A

In adopting the ALJ's proposed decision as its own, Board found Nabizadeh's testimony was not credible and he was not a truthful person. It also found: "The only reasonable explanation that accounts for all of the facts underlying [his] conviction is that [he] was the individual who arranged for the purchase and shipment of the [E]cstasy pills from Canada. . . . [H]is overall acts and insistence on misrepresenting the facts lead to the conclusion that he cannot be trusted, and is not an appropriate candidate for probation." Accordingly, Board adopted the ALJ's recommendation for discipline and revoked Nabizadeh's physical therapy license.

B

Although Nabizadeh asserts Board revoked his physical therapy license for the improper purpose of punishment, there is nothing in the record to support his assertion. Based on his Penal Code section 32 offense, Board could have imposed discipline

16

ranging from three years' probation to revocation under applicable guidelines. (Cal. Code Regs., tit. 16, § 1361.) Board's decision to impose the maximum discipline based on the particular circumstances in this case does not show it acted for the improper purpose of punishment. (Cf. *Cadilla v. Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 968.) Rather, we presume Board acted with the proper purpose of protecting the public. (§ 2602.1 [protection of public is Board's highest priority].) Nabizadeh was convicted of being an accessory after the fact to possession of MDMA, an analog of methamphetamine (Pen. Code, § 32). The evidence admitted at the administrative hearing showed that in addition to possession of MDMA/Ecstasy, he also possessed large quantities of other drugs for which he did not have current, valid prescriptions. Rather than admitting the full extent of his conduct involving the drugs, he claimed he only unwittingly held the MDMA package for a friend and that the steroids found in his residence were solely to "help [him] get bigger." Board properly found he is a "consummate prevaricator" who cannot be trusted. Therefore, it properly chose to revoke his physical therapy license based on his misconduct and lack of trustworthiness. It reasonably concluded he was not an appropriate candidate for probation because of his lack of trustworthiness.

Contrary to Nabizadeh's assertion, Board's observation that he "was fortunate that he received such a favorable plea bargain in the criminal matter" does not show it revoked his physical therapy license for the improper purpose of punishing him rather than the proper purpose of protecting the public. Contrary to his assertion, the fact that

17

he, as a physical therapist, cannot prescribe medications and he did not traffic drugs to his patients does not disprove Board's implied finding that his involvement in drug trafficking and lack of trustworthiness could potentially adversely affect his fitness to perform his functions as a physical therapist. (Cal. Code Regs., tit. 16, § 1399.20; *Watson v. Superior Court*, *supra*, 176 Cal.App.4th at p. 1415 [potential adverse impact may demonstrate unfitness to practice the profession].) Nabizadeh has not carried his burden on appeal to show Board abused its discretion by revoking his physical therapy license. (*Landau v. Superior Court*, *supra*, 81 Cal.App.4th at pp. 217-218.)

DISPOSITION

The judgment is affirmed.


McDONALD, J.

WE CONCUR:


NARES, Acting P. J.


McINTYRE, J.