Filed 10/23/25; certified for publication 11/18/25 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANTON'S SERVICES INC., | D084833 |
| Appellant, | |
| v. | (Super. Ct. No. 37-2023-00021117-CU-WM-CTL) |
| KATRINA S. HAGEN, as Director, etc. et al., | |
| Respondents; | |
| DIVISION OF LABOR STANDARDS ENFORCEMENT, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Wendy M. Behan, Judge. Affirmed.

Silver Law Firm and Zvi Silver for Appellant.

No appearance for Respondents.

Lance A. Grucela for Real Party in Interest and Respondent.

Plaintiff and appellant Anton's Services Inc. allegedly violated state labor statutes and regulations applicable to public works by misclassifying and underpaying workers and failing to comply with apprenticeship requirements.  Real party in interest and respondent Division of Labor Standards Enforcement (DLSE) cited Anton's for those violations and assessed penalties.  Anton's administrative appeal was unsuccessful, and it thereafter filed a petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5, which the superior court denied.

On appeal, Anton's contends the superior court erroneously upheld administrative findings that: (1) Anton's misclassified workers on two public works projects; (2) Anton's is liable for penalties for failing to pay these workers the prevailing wage; (3) Anton's is liable for liquidated damages; (4) Anton's failed to comply with apprenticeship requirements; and (5) Anton's is liable for penalties for failing to comply with apprenticeship requirements.  Finding no error, we affirm.

BACKGROUND

A.    *Prevailing Wage Law*

Under the Prevailing Wage Law, Labor Code[1] sections 1720 through 1861, workers employed under a public works contract must generally be paid "prevailing wages."  (§ 1771.)  The prevailing wage is set by the Director of Industrial Relations (Director) and depends on worker classification and location.  (See §§ 1770, 1773, 1773.9.)  The Director also creates worker classifications, determining the scope of work for each.  (See § 1773.5, subd. (a); Cal. Code Regs., tit. 8, § 16303, subd. (a).)  Contractors on public works projects must pay workers the prevailing wage under the proper job classification.  (See § 1774.)

---

[1]    Undesignated statutory references are to the Labor Code.

2

In addition, before commencing work on a contract for public works, every contractor must submit contract award information to an applicable apprenticeship program that can supply apprentices to the project. (§ 1777.5, subd. (e).) Unless an exemption applies, contractors must employ apprentices to perform one hour of work for every five hours of work performed by journeypersons in the applicable craft or trade. (§ 1777.5, subd. (i); Cal. Code Regs., tit. 8, § 230.1, subd. (a).) If a contractor is "not already employing sufficient registered apprentices" to meet this requirement, it "must request the dispatch of required apprentices from" appropriate apprenticeship committees "by giving the committee written notice of at least 72 hours (excluding Saturdays, Sundays and holidays) before the date on which one or more apprentices are required." (Cal. Code Regs., tit. 8, § 230.1, subd. (a).) There is thus both an initial notice requirement and a subsequent requirement that contractors request dispatch of apprentices if unable to meet the required ratio.

The DLSE is charged with enforcing these prevailing wage and apprenticeship requirements. (Lab. Code, § 1741.) The DLSE issues civil wage and penalty assessments for violations of the Prevailing Wage Law. (*Ibid.*) A party may challenge a civil wage and penalty assessment in a hearing before the Director. (Lab. Code, § 1742.) A party can, in turn, seek judicial review of the Director's decision under Code of Civil Procedure section 1094.5.

B.    *Factual Background*

1.    *The Torrey Pines Road Project*

In 2017, the City of San Diego (City) awarded Hazard Construction Company (Hazard) a contract for road improvement and slope restoration along Torrey Pines Road (the Torrey Pines Road Project). The contract

3

specified that California prevailing wage rates applied to the project. The scope of work under the contract included: excavation of the slope to achieve the required space for a sidewalk; removal of sloughing soil and debris from the slope face; installation of permanent soil-nails wall; installation of new sidewalk, retaining curb, and walls; installation of a pedestrian crossing with street lighting and crosswalk systems; asphalt concrete overlay with striping of buffered bike lanes; and installation of a flush stamped and painted asphalt median.

Hazard contracted with Anton's as a "Clearing/Demolition Constructor" on the Torrey Pines Road Project. According to inspection reports, Anton's work included "clearing and grubbing" the slope. Generally, "[c]learing and grubbing consists of methodically 'scarifying' or tilling the soil on a construction site to remove vegetation, roots, and other undesirable material." (*Moorefield Construction, Inc. v. Intervest-Mortgage Investment Co.* (2014) 230 Cal.App.4th 146, 150.) Anton's brief indicates that its work was consistent with this definition. Anton's claims the clearing included removal of a small palm tree, which it contends "was in a public utility easement."[2]

As the work continued, concerns arose that a Torrey pine tree might fall if the slope became unstable. After consulting with the City, Anton's stabilized the tree with cables and belts and trimmed it back before proceeding with additional clearing and grubbing.

Following an investigation, the DLSE issued a civil wage and penalty assessment, concluding that Anton's had failed to properly classify workers, failed to pay prevailing wages, and had committed apprenticeship violations.

---

[2]     As discussed below, Anton's improperly relies on documents not submitted in the administrative proceedings.

4

From the start of its work at the Torrey Pines Road Project, Anton's paid workers the rates for "Tree Maintenance." The scope of work for the "Tree Maintenance (Laborer)" classification includes:

> "2. tree maintenance, including trimming, pruning, topping, tree/stump removal, grinding of stumps, root pruning and root barrier installation; handling, piling, hauling and chipping of brush and limbs; removal and replacement of trees; The operation of all vehicles, tools and equipment including but not limited to hand tools of any type, chainsaws, pole saws, pruners, stump grinders for trees, boom trucks, loaders and trucks for personnel, material and equipment, debris removal and towing.

> "3. This [classification] does not cover (a) any work of any employee performing construction or landscape construction work (including work incidental to construction or post-construction maintenance during the plant installation and establishment period) and (b) tree trimmer utility line clearance work within the scope of work in any pre-existing prevailing wage determinations for Tree Trimmer (High Voltage Line Clearance) and Tree Trimmer (Line Clearance), issued by the Director of Industrial Relations."

The DLSE determined Anton's should have paid its workers the prevailing wage under the "Laborer (Engineering Construction)" classification, a broad category that includes:

> "(2) Street and highway work, grading and paving, excavation of earth and rock, including non-destructive utility line location (hydrovac operations), grade separations, elevated highways, viaducts, bridges, abutments, retaining walls, subways, airport grading, surfacing and drainage, electric transmission line and conduit projects, underground communication and conduit installation, fiberoptic installation, blowing, splicing, testing and related work for telephone, T.V. or other communication transmission through underground conduit, water supply, water, development, reclamation, irrigation,

5

draining and flood control projects, water mains, pipe lines, sanitation and sewer projects, dams, aqueducts, canals, reservoirs, intakes, channels, levees, dikes, revetments, quarrying of breakwater or riprap stone, foundations, pile driving, piers, locks, river and harbor projects, breakwaters, jetties, dredging, tunnels. [¶] . . . [¶]

"(11) All work in connection with excavation for incidental building and other construction including digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing and bracing of foundations, holes, caissons, cofferdams, manning, setting and moving all manually movable pumps. [¶] . . . [¶]

"(14) All work in the excavation, grading, preparation, concreting, asphalt and mastic paving, paving, ramming, curbing, flagging, traffic control by any method, and laying of other stone materials, . . . and bridges. [¶] . . . [¶]

"(16) All work in connection with the cutting of streets and ways for all purposes, including aligning by any method, digging of trenches, manholes, etc., handling and conveying of all materials for same; concrete of same; and the backfilling, grading and resurfacing of same."

Based on the misclassification of workers, the DLSE determined that Anton's owed additional wages and apprenticeship training fees.

The DLSE also found that Anton's failed to submit contract award information to applicable apprenticeship committees before starting work, failed to request dispatch of apprentices from the applicable apprenticeship committees, and did not employ apprentices in the required ratio. The Civil Wage and Penalty Assessment for the Torrey Pines Road Project, which totaled $36,626.30, included $22,526.30 in unpaid prevailing wages, $12,720 in penalties under section 1775 for failing to pay prevailing wages, and $1,380.00 in penalties under section 1777.7 for apprenticeship violations. As required by section 1727, subdivision (b), after the Civil Wage and Penalty

6

Assessment was issued, Hazard withheld $36,626.30 from Anton's and transmitted those funds to the City.

### 2. *The Voltaire Street Project*

Also in 2017, the City awarded Hazard a public works contract to renovate an overpass on Voltaire Street in San Diego County (the Voltaire Street Project). The scope of work included: removing and replacing existing barrier rails and sidewalks; removing the existing raised median; repairing the concrete bridge deck; reducing the number of through-lanes; removing and replacing street lights; installing accessible curb ramps; and modifying storm drain inlets on and immediately adjacent to the overpass. Hazard contracted with Anton's for "[r]emoval of bridge sidewalk, railing, and edge concrete." Anton's performed work on the Voltaire Street Project between February 1, 2018, and September 28, 2018. Anton's claims that its work on the Voltaire Street Project also included tree removal.

Following an investigation, the DLSE issued a Civil Wage and Penalty Assessment for the Voltaire Street Project. As on the Torrey Pines Road Project, DLSE found Anton's had classified workers under "Tree Maintenance" instead of "Laborer," thus underpaying workers and failing to pay appropriate apprenticeship fees. This Civil Wage and Penalty Assessment totaled $10,653.88, including $1,653.88 in unpaid prevailing wages and $9,000 in penalties under section 1775 for failing to pay prevailing wages.

## C. *Administrative Proceedings*

Anton's challenged both Civil Wage and Penalty Assessments under section 1742. The parties agreed to submit the matters to the Director for decision on stipulated facts and documentary evidence. After considering the

parties' submissions, the Director issued a decision affirming the Assessments.

The Director first found that Anton's had misclassified workers on both projects. The Director found "the nature of work" for each project was "construction work," and noted that "the applicable scope of work for the Tree Maintenance classification . . . specifically excluded coverage of construction or landscape construction work, including work incidental to construction."

The Director rejected Anton's argument that the tree work on the Torrey Pines Road Project was not incidental to construction "because it was the subject of a [change order] that expanded the contract to include additional work on the tree." Rather, the Director found "the additional work on the Torrey [p]ine tree was part of the construction project, because the tree had to be trimmed before clearing work could continue on the soil nail wall."

Although Anton's argued "that it 'received no compensation for [its] work [on the Voltaire Street Project] because the City determined this was outside the original contract scope of work,'" the Director noted Anton's had not cited any "evidence to support this claim." Similarly, although Anton's argued it could have properly classified its workers as "Tree Trimmer (High Voltage Line Clearance)" at a lower rate of pay due to the presence of utilities, the Director found "[n]either scope of work for either [p]roject contains any reference to line clearance for communications lines or electric power lines, nor is there evidence that Anton's workers performed such line clearance work."

Next, the Director addressed the $120 per-day penalties imposed under section 1775, subdivision (a). After noting it was Anton's burden to establish the penalty constituted an abuse of discretion (Cal. Code Regs.,

8

tit. 8, § 17250, subd. (c)), the Director concluded Anton had not provided any "compelling or probative evidence establishing that the workers had not been misclassified or underpaid," and had not produced "evidence that [it] made a good faith mistake, or that it promptly and voluntarily corrected its misclassification error and the consequent failure to pay the correct prevailing wage when these issues were brought to its attention." In fact, the Director found "Anton's lacks any reasonable defense to worker misclassification, which supports a finding that the violations were willful."

The Director also found Anton's liable for liquidated damages under section 1742.1, subdivision (a), which provides that "[a]fter 60 days following the service of a civil wage and penalty assessment," a party "shall be liable for liquidated damages in an amount equal to the wages, or portion thereof, that still remain unpaid." Section 1742.1, subdivision (b) provides, "there shall be no liability for liquidated damages if the full amount of the assessment or notice, including penalties, has been deposited with the Department of Industrial Relations, within 60 days following service of the assessment or notice, for the department to hold in escrow pending administrative and judicial review." The Director found Anton's had neither paid back wages nor deposited the full amount of either assessment with the Department of Industrial Relations (Department), and thus was liable for liquidated damages.

The Director upheld the DLSE's finding that Anton's failed to comply with the apprenticeship requirements of section 1777.5 on the Torrey Pines Road Project. The Director found, under section 1777.5, subdivision (e), Anton's was "required to submit contract award information to the [San Diego Chapter of the Associated General Contractors of America Joint Apprenticeship Committee (Apprenticeship Committee)] prior to the

9

commencement of work on the Torrey Pines Road Project." Anton's conceded it did not submit contract award information to the Apprenticeship Committee before starting work. The Director also found Anton's had violated section 1777.5 and related regulations by failing to request or employ an adequate number of apprentices. (See § 1777.5, subd. (i); Cal. Code Regs., tit. 8, § 230.1, subd. (a).)

Finally, the Director upheld the DLSE's imposition of penalties under section 1777.7, subdivision (a)(1), which requires penalties if a contractor "knowingly violate[s] Section 1777.5." The Director found Anton's " 'knowingly violated' the requirement of a 1:5 ratio of apprentice hours to journeyperson hours because it employed insufficient Laborer apprentices," applying an "irrebuttable presumption that Anton's knew or should have known of the apprenticeship requirements of section 1777.5 applies because Anton's was issued prior assessments for apprenticeship violations and because the contract for the Torrey Pines Road Project notified Anton's of its obligation to comply with prevailing wage requirements." (See Cal. Code Regs., tit. 8, § 231, subd. (h).)

D. *Mandate Proceedings*

Anton's filed a petition for writ of mandate under Code of Civil Procedure section 1094.5, seeking judicial review of the Director's decision. The trial court rejected Anton's efforts to rely on extra-record evidence in support of its petition. Applying the substantial evidence standard, the court found that the administrative record and applicable law supported the Director's decision.

10

DISCUSSION

A.   *Standard and Scope of Review*

Code of Civil Procedure section 1094.5 governs review of a decision by the Director concerning a Civil Wage and Penalty Assessment. (See, e.g., *Reliable Tree Experts v. Baker* (2011) 200 Cal.App.4th 785, 790.) Where, as here, the trial court has reviewed the Director's decision under the substantial evidence standard, this court also reviews the administrative record as a whole for substantial evidence. (See Code Civ. Proc., § 1094.5, subd. (c); Lab. Code, § 1742, subd. (c).) Under this standard, we do not reweigh the evidence, and we resolve any conflicts in the evidence and reasonable doubts about the decision in the Director's favor. (See *City of Hesperia v. Lake Arrowhead Community Services Dist.* (2019) 37 Cal.App.5th 734, 761.) The appellant has the burden of establishing that the Director's findings are not supported by substantial evidence in the administrative record. (See *Schutte & Koerting, Inc. v. Regional Water Quality Control Bd.* (2007) 158 Cal.App.4th 1373, 1384.)

Several of Anton's arguments rely on documents outside the administrative record. Evidence outside the administrative record is generally not admissible in proceedings filed under Code of Civil Procedure section 1094.5. (See, e.g., *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 578; *Nightlife Partners v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 89).) DLSE objected to Anton's notice of lodgment of extra-record material in the trial court. It appears Anton's did not seek to justify its reliance on this material and did not respond to the DLSE's objection. In its order, the trial court rejected Anton's attempts to rely on extra-record material.

11

Anton's does not challenge the trial court's exclusion of this evidence and does not explain why this court should consider evidence not contained in the administrative record. Anton's has forfeited such arguments. (See, e.g., *Asaro v. Maniscalco* (2024) 103 Cal.App.5th 717, 728, fn. 4 (*Asaro*) [a party forfeits arguments not briefed on appeal].) We thus limit our review to the administrative record and will not consider arguments that rely on extra-record evidence.

B.    *Misclassification*

1.    *Torrey Pines Road Project Classification*

Anton's principally argues it properly classified workers on the Torrey Pines Road Project because they performed work on a Torrey pine tree. However, Anton's does not dispute that the Torrey Pines Road Project was a construction project. Anton's was designated as a "Clearing/Demolition *Constructor*." (Italics added.) Anton's actual work performed principally consisted of "clearing and grubbing," which is the removal of vegetation. As Anton's concedes, this work was necessary preparatory work for the slope stabilization, and thus incidental to construction work. Anton's work stabilizing and trimming the Torrey pine tree was also incidental to the broader construction project, as the tree only needed to be stabilized so the slope work could proceed. The Tree Maintenance classification expressly "does not cover . . . any work of any employee performing construction or landscape construction work (including work incidental to construction or post-construction maintenance during the plant installation and establishment period)."

Anton's argues, in several different ways, that its work on the Torrey pine tree should be considered separate from, and not incidental to the

broader Torrey Pines Road Project. Anton's cites no authority in support of its various arguments. Nor do we find them persuasive.

Anton's argues: (1) it holds an arborist license, was acting as an arborist when working on the tree, and invoiced the services as "Arborist Services"; (2) other work stopped while waiting for the tree to be stabilized; and (3) the trunk of the tree was outside of the project area.[3] None of these factors undermine the conclusion that the work was "incidental" to construction. (See, e.g., *Cleveland National Forest Foundation v. County of San Diego* (2019) 37 Cal.App.5th 1021, 1051 [meaning of "incidental" may "include the concept of an association or dependency on the primary use"]; Black's Law Dictionary (12th ed. 2024) p. 908, col. 1 ["incidental" defined as "Subordinate to something of greater importance; having a minor role"].)

Anton's also claims the tree work was not part of the original scope of work for the project. But the additional tree work only became necessary to further the broader construction project, so remains incidental to that work. Relatedly, Anton's argues that because the work was performed pursuant to a change order, it could have simply passed along costs to the City and made additional profit, as it was entitled to five percent profit on the amount of the change order. Whether or not this is true does not affect our analysis. Regardless of motives, substantial evidence supports the finding that Anton's failed to properly classify its workers and thus underpaid them.

Separate from the Torrey pine work, Anton's argues that its clearing and grubbing involved removal of a "small palm tree" that should qualify as Tree Maintenance work. This assertion and much of Anton's related

---

[3]    Anton's single record citation does not support its assertion that the trunk of the tree was outside of the project area.

13

arguments rely on evidence outside of the record, which we will not consider.[4]

### 2. *Voltaire Street Project Classification*

Anton's also fails to demonstrate that the Director erred by finding Anton's misclassified workers on the Voltaire Street Project. The Voltaire Street Project involved renovating an overpass, and Anton's was contracted to "[r]emov[e] [a] bridge sidewalk, railing, and edge concrete." Anton's fails to cite any evidence in the administrative record supporting its claim that its work on this project involved any tree maintenance or removal at all. Anton's provides no basis to assess the nature of the alleged tree-related work and thus no grounds to conclude that the Director erred.

Relatedly, Anton's has failed to support and thus forfeited other arguments concerning the Voltaire Street Project, including that the work "was outside the geographical area of the" Voltaire Street Project area and thus, it was not subject to public works laws.[5] Many of the statements

---

[4] Anton's also argues, in the "Summary of the Significant Facts" section of its opening brief, that it erroneously claimed to have worked on the Torrey Pines Road Project on April 16, 2018, in its certified payroll reports. " 'Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading.' " (*Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1065.) In any case, Anton's stipulated in the administrative proceedings that its "certified payroll reports [citation] accurately reflect the hours worked by, and amounts Anton's paid to, its employees on both projects."

[5] We note that Anton's did not make this argument in proceedings before the Director, and in fact stipulated that the "work subject to the Assessments was performed on public works and required the employment of apprentices and the payment of prevailing wages under the California Prevailing Wage Law . . . ."

14

Anton's makes regarding the Voltaire Street Project in the "Summary of the Significant Facts" section of its opening brief are not supported by any record citations in violation of California Rules of Court, rule 8.204, subdivision (a)(1)(C). (*Ibid.* [an appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) "We are not required to search the record to ascertain whether it contains support for [Anton's] contentions." (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545.) With one immaterial exception,[6] the limited evidence Anton's cites in this portion of the brief is outside of the administrative record, and (as discussed above) not cognizable in these proceedings. In light of these deficiencies, we decline to further address the merits of Anton's arguments regarding the Voltaire Street Project misclassification.

C.    *Penalties under Section 1775*

Under section 1775, subdivision (a)(1), a subcontractor "shall . . . forfeit not more than two hundred dollars ($200) for each calendar day . . . for each worker paid less than the prevailing wage."

> "(A) The amount of the penalty shall be determined by the Labor Commissioner based on consideration of both of the following:
>
> "(i) Whether the failure of the contractor or subcontractor to pay the correct rate of per diem wages was a good faith mistake and, if so, the error was promptly and voluntarily corrected when brought to the attention of the contractor or subcontractor.

---

6    Anton's cites to the administrative record for the proposition that it "started demolition work on the Voltaire Project on February 21, 2018."

"(ii) Whether the contractor or subcontractor has a prior record of failing to meet its prevailing wage obligations." (§ 1775, subd. (a)(2)(A).)

"[I]n reviewing the penalty imposed by an administrative body, . . . an appellate court is [not] free to substitute its own discretion as to the matter." (*Nightingale v. State Personnel Board* (1972) 7 Cal.3d 507, 515.)

Anton's suggests it should not be liable for penalties because it acted in a good-faith belief that it was properly classifying its workers, citing its legal arguments in this appeal as support. As we have discussed, Anton's arguments in this appeal are unsupported by either appropriate factual citations, relevant legal authority, or both. We cannot agree that the arguments presented demonstrate that the misclassification was a good-faith mistake.

Anton's also argues its good faith is evidenced by the fact that its classification of workers was against its own interests, suggesting that it would not have intentionally underpaid workers because it could have passed along higher costs to the City and increased its own profit margin. Anton's adds that it properly classified and paid workers on portions of each project. Anton's ignores the countervailing evidence that bears directly on the statutorily mandated considerations: Anton's failure to "promptly and voluntarily correct[]" its underpayment in connection with these projects and a prior record of prevailing wage violations and penalties under section 1775. In sum, Anton's fails to show that the Director's decision is not supported by substantial evidence.

16

D.	*Liquidated Damages on the Torrey Pines Road Project*

Anton's argues the Director improperly imposed liquidated damages under section 1742.1, which provides:

> "(a) After 60 days following the service of a civil wage and penalty assessment under Section 1741 or a notice of withholding under subdivision (a) of Section 1771.6, the affected contractor, subcontractor, and surety on a bond or bonds issued to secure the payment of wages covered by the assessment or notice shall be liable for liquidated damages in an amount equal to the wages, or portion thereof, that still remain unpaid.  If the assessment or notice subsequently is overturned or modified after administrative or judicial review, liquidated damages shall be payable only on the wages found to be due and unpaid.  Any liquidated damages shall be distributed to the employee along with the unpaid wages. . . .

> "(b) Notwithstanding subdivision (a), there shall be no liability for liquidated damages if the full amount of the assessment or notice, including penalties, has been deposited with the Department of Industrial Relations, within 60 days following service of the assessment or notice, for the department to hold in escrow pending administrative and judicial review. . . ."

It claims that, because Hazard withheld $36,626.30 from Anton's and transmitted those funds to the City under section 1727, subdivision (b), no "wages . . . remain[ed] unpaid" for purposes of section 1742.1, subdivision (a).  Anton's claims that "if the amount of the assessment is paid by anyone to any proper governmental body," a party cannot be liable for liquidated damages.  We do not agree.

Statutory interpretation is "a question of law that we review de novo." (*Bruns v. E–Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)  "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory

17

language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) "If the language is clear, [we] must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Ibid.*)[7]

Under a plain and commonsense meaning, withholding money due under a contract is not the payment of "wages." While Anton's correctly notes that section 1742.1, subdivision (a), does not explicitly direct the payment of "wages" to any particular party, a "wage" is "[p]ayment for labor or services." (E.g., Black's Law Dict. (12th ed. 2024) p. 1898, col. 1.) The phrase "wages that still remain unpaid" makes clear that the money must be paid to the workers who should have already received it.

This provision is not satisfied by the contractor withholding funds from the responsible subcontractor under section 1727, subdivision (b), which provides: "If the awarding body has not retained sufficient money under the contract to satisfy a civil wage and penalty assessment based on a subcontractor's violations, the contractor shall, upon the request of the Labor Commissioner, withhold sufficient money due the subcontractor under the contract to satisfy the assessment and transfer the money to the awarding body. These amounts shall not be disbursed by the awarding body until receipt of a final order that is no longer subject to judicial review." The funds withheld from the subcontractor are not "paid" to anyone until after final

7       The DLSE seeks judicial notice of certain aspects of the legislative history of section 1742.1. Finding the language clear, we need not rely on these materials. The request is therefore denied.

18

review.  Thus, they remain "unpaid."  Nothing in the language of section 1742.1 suggests that a subcontractor's liability for liquidated damages can be avoided by the contractor's withholding of funds under section 1727, subdivision (b).  Section 1742.1 contains no reference to section 1727 and by its terms specifies only one way to avoid liability for liquidated damages other than paying the workers: depositing the full amount of the assessment or notice, including penalties, with the Department.

Anton's nonetheless claims its position is supported by the clause specifying:  "If the assessment or notice subsequently is overturned or modified after administrative or judicial review, liquidated damages shall be payable only on the wages found to be due and unpaid."  (§ 1742.1, subd. (a).)  Anton's argues, "The unpaid wages that was [*sic*] overturned by the Court were certainly not 'paid to the workers,' yet, there is no imposition of liquidate[d] damages for the overturned amount.  This demonstrates that there is no requirement that the money be actually paid to the workers."  The language quoted by Anton's merely clarifies that liquidated damages may only be assessed on the wages found to be unpaid upon review.  That is in no way inconsistent with the understanding that "wages" remain "unpaid" until they are actually paid to the workers who earned them.

We appreciate that automatically withholding money from a subcontractor under section 1727 would seem to make it harder for that party to satisfy section 1742.1, subdivision (a), by paying workers.[8]  It may similarly make it more difficult for that party to insulate itself from liquidated damages by making a deposit in accordance with section 1742.1,

---

[8]     There is no evidence that these are the circumstances in this case, as Anton's asserts that it gave money to Hazard to satisfy the withholding under section 1727.

19

subdivision (b). But these are policy concerns for the Legislature to weigh, not this court when faced with the application of clear statutory language. (See, e.g., *Standon Co. v. Superior Court* (1990) 225 Cal.App.3d 898, 904 ["Unless the plain language of a statute leads to absurdity, a court may not so construe it as to substitute its wisdom for that of the legislature."].) We are not at liberty to rewrite the plain language of section 1742.1 by creating a new exception to its liquidated damages provision for cases in which the contractor has withheld funds under section 1727. "Where, as here, the Legislature has not created an exception, a court may not insert one into the statute." (*Mamer v. Weingarten* (2025) 108 Cal.App.5th 169, 174.)

Anton's also suggests that, because sections 1727 and 1742.1, subdivision (b), serve similar purposes, a subcontractor should not be held liable for liquidated damages if the contractor has withheld funds and transmitted them to the awarding body. As Anton's observes, section 1742, subdivision (f), provides that money withheld under section 1727 is released to the Department in the event the assessment is affirmed. Thus, under both statutes, money is eventually sent to the Department.

However, the Legislature chose only to insulate a party from liability for liquidated damages if it deposits money directly with the Department, and it is not unreasonable to respect the distinction between these statutes. Requiring withholding by the contractor or awarding body secures funds for the payment of the assessment and penalties regardless of the offending subcontractor's actions or status, including possible bankruptcy or inability to pay. The Legislature also could have considered redundancy appropriate to cover interest on the unpaid wages. (See § 1741, subd. (b).) As noted by the DLSE, multiple "statutes guaranteeing timely payment of progress and retention amounts . . . permit[] the owner or direct contractor to withhold up

20

to 150 percent of the amount in dispute from the contractor or subcontractor, respectively." (*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1088 [collecting statutes].) We do not think it absurd that sections 1727 and 1742.1 may result in the parties setting aside up to 200 percent of the assessment prior to review.[9] Nor do we need to decide how the parties would recoup any overage after the proceedings have concluded.

Anton's argues the DLSE should be "equitably estopped" from pursuing liquidated damages because it directed Hazard to transfer the withheld money to the City. Under section 1727, subdivision (b), "upon the request of the Labor Commissioner, [the contractor shall] withhold sufficient money due the subcontractor under the contract to satisfy the assessment and transfer the money to the awarding body." Anton's fails to explain how following the language of the statute supports estoppel.

Anton's also briefly raises a constitutional argument, but fails to explain its theory or provide supportive authority. "We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as [forfeited]." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone*).)

Anton's remaining arguments iterate on these contentions and fail to change our view of the relevant statutes. Again, while there appears to be some redundancy built into the statutory scheme, we do not see any absurd

---

9       Anton's argument that the statutes may result in interested parties withholding, depositing, or paying 900 percent of the assessment lacks foundation. Any party who may be liable for liquidated damages can either pay workers their unpaid wages within 60 days or deposit the entire amount of the assessment with the Department of Industrial Relations. (§ 1742.1.)

results that would warrant a departure from the plain language of section 1742.1.

E.      *Apprenticeship Violations on the Torrey Pines Road Project*

Anton's was held liable for three apprenticeship-related violations: (1) failure to give timely notice of the Torrey Pines Road Project; (2) failure to employ a sufficient number of apprentices; and (3) failure to request apprentices from local committees. With regard to the first violation, Anton's does not dispute that it failed to submit contract award information to any apprenticeship program before starting work on the Torrey Pines Road Project. Instead, Anton's argues it was not required to do so "because Anton's hires and trains its own apprentices." Anton's cites no authority for this proposition, and there is no such carve-out in section 1777.5, subdivision (e), which provides: "Before commencing work on a contract for public works, *every contractor* shall submit contract award information to an applicable apprenticeship program that can supply apprentices to the site of the public work." (Italics added.)

Second, Anton's fails to show it employed an adequate number of apprentices on the Torrey Pines Road Project. (See § 1777.5, subd. (i); Cal. Code Regs., tit. 8, § 230.1, subd. (a).) Anton's claims, "only straight time hours count toward the minimum ratio. Several days worked on the Torrey Pines [Road] Project were Saturday or overtime shifts due to the emergent nature of the project. Thus, Anton's ratio [of journeymen to apprentices] was correct." As with other arguments, Anton's fails to provide any legal support or appropriate citation to the record. Accordingly, this argument is forfeited. (See *Falcone, supra*, 164 Cal.App.4th at p. 830.)

Third, Anton's does not dispute that it failed to request the dispatch of apprentices from appropriate committees. (Cal. Code Regs., tit. 8, § 230.1,

22

subd. (a).) It asserts it did not need to do so because it "has ongoing approval to train apprentices." A contractor need only request apprentices if it is "not already employing sufficient registered apprentices" to meet the required ratio. (*Ibid.*) As Anton's has not shown it already employed sufficient apprentices, the fact it *could have* done so is not relevant.

Next, Anton's challenges the DLSE's imposition of penalties under section 1777.7, subdivision (a)(1), which provides for penalties up to $100 per day for a contractor who "knowingly violate[s] Section 1777.5." "[A] contractor knowingly violates Labor Code Section 1777.5 if the contractor knew or should have known of the requirements of that Section and fails to comply, unless the failure to comply was due to circumstances beyond the contractor's control." (Cal. Code Regs., tit. 8, § 231, subd. (h).)

Anton's fails to argue that its violations of section 1777.5 were not "knowing[]," instead reiterating its argument that it did not violate section 1777.5. For the reasons explained above, we conclude otherwise.

Moreover, Anton's does not address the Director's finding that there was an "irrebuttable presumption that Anton's knew or should have known of the apprenticeship requirements of section 1777.5 . . . because Anton's was issued prior assessments for apprenticeship violations and because the contract for the Torrey Pines Road Project notified Anton's of its obligation to comply with prevailing wage requirements." Under California Code of Regulations, title 8, section 231, subdivision (h), "There is an irrebuttable presumption that a contractor knew or should have known of the requirement of Section 1777.5 if the contractor had previously been found to have violated that Section, or the contract and/or bid documents notified the contractor of the obligation to comply . . . ." By failing to challenge this

finding, Anton's has forfeited its arguments.  (See, e.g., *Asaro, supra*, 103 Cal.App.5th at p. 728, fn. 4.)

Finally, Anton's claims it should not be liable for underpaying workers due to excessive payment to apprenticeship funds.  Anton's fails to provide any record citations for its factual assertions or any authority for its arguments, which are thus forfeited.  (See *Falcone, supra*, 164 Cal.App.4th at p. 830.)

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.


BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANTON'S SERVICES INC.,<br><br>　　　Appellant,<br><br>　　　v.<br><br>KATRINA S. HAGEN, as Director, etc., et al.,<br><br>　　　Respondents;<br><br>DIVISION OF LABOR STANDARDS ENFORCEMENT,<br><br>　　　Real Party in Interest and<br>　　　Respondent. | D084833<br><br><br><br>(Super. Ct. No. 37-2023-00021117-CU-WM-CTL)<br><br><br><br>ORDER CERTIFYING<br>OPINION FOR PUBLICATION |

THE COURT:

　　　The opinion in this case filed October 23, 2025 was not certified for publication.  It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

　　　IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to Be Published in the Official Reports"

appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P.J.

Copies to:  All parties